# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PITTSBURGH METRO AREA POSTAL )
WORKERS' UNION, AFL- CIO, )
a Labor Organization and AMERICAN )
POSTAL WORKERS' UNION, AFL-CIO, )
a Labor Organization )
        Plaintiffs, )
)
    vs. )    Civil Action No. 07-00781
)    Judge Nora Barry Fischer
UNITED STATES POSTAL SERVICE, )
        Defendant. )

## MEMORANDUM OPINION AND ORDER

The Pittsburgh Metro Area Postal Workers' Union, AFL-CIO and the American Postal Workers' Union, AFL- CIO (collectively "Unions") brought this action to enforce an arbitration award entered in their favor by Arbitrator Elliot Newman ("Arbitrator") on April 9, 2007, against Defendant United States Postal Service ("Postal Service"). Before this Court for consideration is Defendant's Motion to Dismiss, or, in the alternative, Motion for Summary Judgment [9]. For the following reasons, the Postal Service's motion is granted and this case is remanded to the Arbitrator for clarification of his award.

## BACKGROUND

The Union and Postal Service are parties to a collective bargaining agreement ("agreement") effective November 21, 1990 through November 20, 1994, November 21, 1994 through November 20, 1998, November 21, 1998 through November 20, 2000, and November 21, 2000 through November 20, 2006. (Docket No. 1, at ¶ 6). As part of the agreement, the parties agreed that "all disputes, differences, disagreements, or complaints between the parties relating to wages, hours and conditions of employment, including disputes over interpretation or application of the terms of the

1

[agreement], and compliance therewith, are required to be resolved through the contractual grievance procedure." (Docket No. 1, at ¶ 8). Said contractual procedure provides that grievances which cannot be resolved by the parties be sent to arbitration. (Docket No. 1, at ¶ 9).

Between the years 1994 and 1998, the Union filed several "casual in lieu of" grievances against the Postal Service, alleging violations of Article 7.1.B.1 of the parties' agreement "by hiring casual clerks at the Pittsburgh PA P&DC in lieu of full time and part time clerks from March 25, 1994 until August 20, 2004." (Docket No. 10, Exh. 1, at 1-2). These causes were jointly consolidated (at USPS Case C98C- 1C- C 01019331; APWU Case No. 2003131) and were brought before the Arbitrator in three hearings held on July 13, 2006, September 7, 2006 and December 14, 2006. (Docket No. 10, Exh. 1, at 1-5). At said hearings, the parties were given the opportunity "to present testimony, examine and cross-examine witnesses and introduce documentary evidence in support of their respective positions." (Docket No. 10, Exh. 1, at 3). Specifically, the Union alleged that the Postal Service hired employees in violation of Article 7.1.B.1, which provides:

> Article 7  Employee Classifications
>
> Section 1.  Definition and Use
>
> B.  Supplemental Work Force
>
>> 1.    The supplemental work force shall be comprised of casual employees.  Casual employees are those who may be utilized as a limited term supplemental work force, but may not be employed in lieu of full or part-time employees.

(Docket No. 10, Exh. 1, at 4). The record was closed on March 5, 2007.

The Arbitrator then addressed the issue of whether the Postal Service violated this portion of the agreement "by the manner in which  casual employees were hired in the Clerk Craft at the

Pittsburgh, PA P& DC" and the remedy for said violation, if any. (Docket No. 10, Exh. 1, at 5). On April 9, 2007, the Arbitrator issued an opinion, holding in favor of the Union and finding that the Postal Service had hired casual clerks "in lieu of full and part time clerks," (Docket No. 10, Exh. 1, at 16), in violation of Article 7.1.B.1 of the agreement between the Union and Postal Service. (Docket No. 10, Exh. 1, at 1). Specifically, the Arbitrator held that the Postal Service, "maintained a steady and consistent workforce of casuals in lieu of employees, without any demonstrated genuine need at any particular time ... . While the Postal Service may have complied with Article 7.1.B.2 , 3 and 4 in its hiring of casual employees during the period from 1994 to 2004, it did not comply with Article 7.1.B.1 [sic] as interpreted by Arbitrator Das ... 'Therefore, on the merits, the grievance must be, and is, sustained.' " (Docket No. 10, Exh. 1, at 16). Furthermore, the Arbitrator held: "As during period from 1994 to 2004, casual clerks were not hired at the Pittsburgh P&DC as a limited term supplemental work force, but rather were hired in lieu of full and part-time clerks, the grievances will be sustained with an appropriate remedy." (Docket No. 10, Exh. 1, at 16).

As to the remedy and award, the Arbitrator ruled, in pertinent part:

> The appropriate scope of the remedy would be the hours worked by casual clerks from March 25, 1994 to August 20, 2004. Subtracted from this remedy should be 500,000 hours for the hiring of casual clerks during the Christmas season from 1994 through 2003. The overtime payments due the appropriate full and part time clerks should be calculated at the "then current overtime rates" between March of 1994 and August of 2004. If the parties wish, they may substitute "at the level 5, step 0 rate" or establish an equivalent average dollar amount applicable over that time period.

> The recipients of the monetary awards are identified as follows: "All full and part-time clerk craft employees on the Pittsburgh P&DC's seniority rolls are to receive a prorated share of the remedy based upon the amount of time on the rolls during the period of the violation from March 25, 1994 to August 20, 2004."

The Postal Service is tasked to calculate and effectuate this remedy.

(Docket No. 10, Exh. 1, at 17- 18). In concluding, the Arbitrator noted that, "I intend this Award to be sufficiently detailed to avoid a protracted dispute over its implementation. However, as my efforts fall short, and interpretive questions remain, I retain jurisdiction over the remedy so as to resolve any questions or disputes." (Docket No. 10, Exh. 1, at 18).

The Unions filed the instant Complaint on June 8, 2007, seeking an order enforcing the April 9, 2007 award issued by the Arbitrator. (Docket No. 1). Subsequently, on July 20, 2007, the Postal Service sent a letter to the Unions stating that the Postal Service had, in applying the Arbitrator's award, calculated that the total amount due the Pittsburgh craft employees is $26,914,151.40. (Docket No. 10, Exh. 2). The letter further provided:

> This amount was arrived at by applying the two step four settlements referenced in the first paragraph on page 17 of the decision. The total overtime worked by casuals for the years 1994 through 2004 is 897,138.38 hours and using $30.00 per hour as a standard overtime rate we arrived at the $26, 914,151.40 amount. The overtime hours worked by the casuals during this period are taken from an exhibit already in evidence in the hearing record.

(Docket No. 10, Exh. 2).

On July 25, 2007, the Unions responded to the Postal Service's letter, disagreeing with the Postal Service's interpretation of the Arbitrator's award with regard to the Postal Service's use of "overtime hours worked." (Docket No. 10, Exh. 3). Specifically, the Unions contended:

> I disagree with your interpretation that Arbitrator Newman awarded monetary remedy for <u>overtime worked</u> by casuals as, that matter was [sic] not an issue ... Your determinations distort the stated remedy and ... would not satisfy compliance with the award ... . However, as to your overtime rate itself; whereas you established the $30.00 per hour rate, be advised that PMAPWU agrees to substitute that rate as the "equivalent average dollar amount" per hour for calculating overtime payments, as instructed by Arbitrator Newman.

4

(Docket No. 10, Exh. 3). The Postal Service countered on August 1, 2007, suggesting that the disputes over the award be remanded to the Arbitrator for clarification of the award. (Docket No. 10, Exh. 4). The Postal Service also argued that the Step 4 grievance settlements were not presented to the Arbitrator, nor was the Postal Service given an opportunity to provide argument as to the inapplicability of this procedure. (Docket No. 10, Exh. 4). In turn, the Unions provided their response by letter dated August 2, 2007, arguing that clarification by the Arbitrator would be inappropriate. (Docket No. 10, Exh. 5). In reply, the Postal Service sent a letter dated August 17, 2007 to the Arbitrator, requesting that he retain jurisdiction over the award dispute. (Docket No. 10, Exh. 6).

On August 31, 2007, the Postal Service filed a Motion to Dismiss, or in the alternative, Motion for Summary Judgment (Docket No. 9) and Brief in Support. (Docket No. 10). The Unions filed their Brief in Opposition to Motion to Dismiss, or in the alternative, Motion for Summary Judgment on September 27, 2007. The Postal Service filed a Reply Brief on October 11, 2007 and the Union filed a Sur-Reply on October 17, 2007. The Court held a hearing on the Postal Service's motion on October 25, 2007, at which the parties provided oral argument on the motion. By Order dated October 30, 2007, the Court ordered a transcript of said proceeding. On or about November 9, 2007, the parties and the Court received said transcript.

## JURISDICTION

A district court has jurisdiction to enforce or vacate an arbitration award pursuant to § 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a). *See United Transp. Union Local 1589 v. Suburban Transport Corp.*, 51 F.3d 376 (3d Cir. 1995). In its Reply Brief in support of its motion, the Postal Service argues that it moved under Rule 12(b)(1) "only in an abundance of caution, and

because the Third Circuit appears to be somewhat inconsistent on this point." (Docket No. 16, at 9 n. 4). However, the Third Circuit has clearly held that a district court has jurisdiction over disputes to enforce arbitration awards. *Union Switch & Signal Div. American Standard Inc. v. United Electrical, Radio & Machine Workers Local 610*, 900 F.2d 608, 612 (3d Cir. 1990) (holding that "[a] district court exercises this jurisdiction not only when it enforces an award resolving an issue the employer and the union have contracted to arbitrate, but also when it enters an order directing that the parties undertake an arbitration process they have contracted to follow"). While this Court does not have jurisdiction over the merits of the grievance dispute between the Union and the Postal Service, *Hart v. Overseas Nat. Airways, Inc.*, 541 F.3d 386, 393 (3d Cir. 1976) (citations omitted), it does have jurisdiction over disputes regarding the finality of the arbitrator's award and remand to the arbitrator for purposes of clarifying the arbitrator's award, *id.* at 389, 393-394 (citations omitted) (granting summary judgment and holding that remand was appropriate where arbitrator's award was vague and ambiguous). Furthermore, while the Postal Service relies on the "complete arbitration rule" (i.e., that the Arbitrator's award is final and binding), the complete arbitration rule does not divest this Court of jurisdiction over the instant matter. Rather, the complete arbitration rule, "while a cardinal and salutary rule of judicial administration, it is not a limitation on a district court's jurisdiction." *Union Switch & Signal Div. American Standard Inc.*, 900 F.2d at 612.

Therefore, this Court has jurisdiction over the Union's Complaint to enforce the Arbitrator's award and thus, to the extent the Postal Service seeks dismissal pursuant to Rule 12(b)(1), said motion is, therefore, denied.

## STANDARD

As a threshold matter, Defendant filed the instant motion pursuant to Rule 12(b)(6), or in the

alternative, pursuant to Rule 56. Plaintiffs respond encouraging the Court to consider the instant motion under Rule 12(b)(6).

"If, in deciding a Motion filed pursuant to Fed.R.Civ.P. 12(b)(6), the court goes beyond the pleadings, and considers depositions, affidavits, or other papers, the court *may* treat the Motion as one for summary judgment pursuant to Fed.R.Civ.P. 56(c)." *Bryn Mawr Hosp. v. Coatesville Elec. Supply Co.* 776 F.Supp. 181, 184 (E.D.Pa.,1991) (citing *Boyle v. Governor's Veterans Outreach and Assistance Center*, 925 F.2d 71, 74 (3d Cir.1991)) (emphasis added). However, "whether or not to treat the motion as a motion for summary judgment by considering the outside materials attached thereto is a matter of discretion for the court." *Brennan v. National Telephone Directory Corp.*, 850 F.Supp. 331, 335 (E.D. Pa. 1994) (citations omitted); *Pryor v. National Collegiate Athletic Ass'n.*, 288 F.3d 548, 559 (3d Cir. 2002) (citing *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir.1992) ("Generally speaking, a trial court has discretion to address evidence outside the complaint when ruling on a motion to dismiss")). In this case, both the Unions and the Postal Service have introduced a number of documents outside of the pleadings in support of their respective arguments, including exhibits attached to the Complaint and briefs as well as exhibits introduced at oral argument. These documents, which the Court may properly consider on at the motion to dismiss stage, *see infra*, are sufficient for this Court's analysis. However, if the Court treated the instant motion as one for summary judgment, the Court would have to give the parties "a reasonable opportunity to present all the material that is pertinent to the motion," Fed.R.Civ.P. 12(d), which may include a lengthy period of discovery, thus causing delay and expenses. Furthermore, "[c]onversion [from a Rule 12(b)(6) motion to a Rule 56 motion] may be improper when the motion to dismiss is filed before discovery begins or during its early stages." *Kuestner v. Health and Welfare Fund &*

*Pension Fund of Philadelphia Bakery Employers and Food Driver Salesmen's Union Local No. 463 and Teamsters Union Local No. 676*, 972 F.Supp. 905, 909 (E.D. Pa. 1997) (citations omitted). Hence, the Court, in its discretion, will treat the instant motion as a 12(b)(6) motion.

While a court's review of a motion to dismiss is ordinarily limited to the contents of the complaint, including any attached exhibits, a court may consider some evidence beyond a complaint on a motion to dismiss "including public records ..., documents essential to plaintiff's claim which are attached to defendant's motion, and items appearing in the record of the case." *Core Const. & Remediation, Inc. v. Village of Spring Valley, NY*, No. Civ. A. 06-CV-1346, 2007 WL 2844870, at *2 (E.D. Pa. Sept. 7, 2007) (citing *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1385 n.1 and n.2 (3d Cir. 1995)) (internal citation omitted). In this case, Arbitrator Newman's award is certainly essential to the Unions' claims and, therefore, this Court will consider the award in ruling on the instant motion. Additionally, both parties have extensively addressed the correspondence between them leading up to and subsequent to the filing of this Complaint. Said correspondence is essential to the Unions' claims concerning enforcement of the Arbitrator's award insofar as it informs this Court of any potential attempt by either party to implement Arbitrator Newman's award since it was issued on April 9, 2007.[1] Therefore, the Court will consider the attachments to the Union's Complaint and the Postal Service's motion in addressing the present 12(b)(6) motion.

Under *Bell Atlantic v. Twombly*,---U.S.---, 127 S.Ct. 1955 (2007), a complaint must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) if the Plaintiff fails to allege "enough

---

[1]

Furthermore, the Court notes that the parties appear to be in agreement in seeking this Court to consider said documents insofar as the Postal Service filed them as attachments to their motion and the Unions specifically urge the Court to consider them in rendering its decision. (Docket No. 13, at 9).

facts to state a claim to relief that is plausible on its face." *Id*. at 1974.

Recently, the Third Circuit addressed the *Twombly* decision and its effect on the appropriate pleading standard, finding that despite the new "plausibility" language, *Twombly* does not demand either a heightened pleading of specific facts or impose a probability requirement on plaintiffs. *Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008). In *Phillips*, the Third Circuit interpreted *Twombly* as a reaffirmation of both the notice pleading standard under Federal Rule of Civil Procedure 8 and the general standard in a Rule 12(b)(6) motion. *Id.*, at 231. However, the Third Circuit identified "two new concepts" within the *Twombly* decision: (1) a plaintiff's obligation under Rule 8 "to provide 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," but Rule 8 requires "that the 'plain statement' possess enough heft to 'sho[w] that the pleader is entitled to relief,' " in other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.*, at 231-232 (citing *Twombly*, 127 S.Ct. at 1964-65, 1966, & n.3); and (2) the " 'no set of facts' language [from *Conley v. Gibson*, 355 U.S. 41 (1957)] may no longer be used as part of the Rule 12(b)(6) standard," *id.,* at 232. In short, the Court provided the following guidance as to *Twombly's* effect:

> Thus, under our reading, the notice pleading standard of Rule 8(a)(2) remains intact, and courts may generally state and apply the Rule 12(b)(6) standard, attentive to context and a showing that "the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests.

*Phillips*, 515 F.3d at 233 (citing *Twombly*, 127 S.Ct. at 1964).

"In determining the sufficiency of the complaint the court must accept all of plaintiffs' well-pled material allegations as true and draw all reasonable inferences therefrom in favor of

plaintiffs." *McCliment v. Easton Area School Dist.*, Civil Action No. 07-0472, 2007 WL 2319768, at *1 (E.D. Pa. Aug. 10, 2007) (citing *Graves v. Lowery*, 117 F.3d 723, 726 (3d Cir. 1997)); *see also Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005); *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1420 (3d Cir. 1997); *Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989). "The issue is not whether a [Plaintiff] will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1420 (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, (1974)). Under this standard, a complaint will be deemed to have alleged sufficient facts if it adequately puts the plaintiff on notice of the essential elements of defendant's claims. *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996). However, a court will not accept bald assertions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *See In re Rockefeller Ctr. Props., Inc. Sec. Litig.,* 311 F.3d 198, 215 (3d Cir.2002); *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 n. 8 (3d Cir.1997). Nor must the court accept legal conclusions set forth as factual allegations. *Bell Atlantic Corp.*, 127 S.Ct. at 1965 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* Overall, "courts have an obligation ... to view the complaint as a whole and to base rulings not upon the presence of mere words, but rather, upon the presence of a factual situation which is or is not justiciable. We do draw on the allegations of the complaint, but in a realistic, rather than a slavish, manner." *Doug Grant, Inc. v. Great Bay Casino Corp.*, 232 F.3d 173, 184 (3d Cir. 2000) (quoting *City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 263 (3d Cir. 1998)).

## ANALYSIS

In support of its motion, the Postal Service argues that the Plaintiffs' Complaint should be

dismissed insofar as (1) it is premature under the "complete arbitration rule;" and (2) this case should be remanded to the Arbitrator for clarification of the arbitration award. (Docket Nos. 10, 16). Specifically, the Postal Service argues that the Arbitrator's award is not final and binding under the complete arbitration rule because "the parties have not been able to reach agreement over the remedy, the arbitrator explicitly retained jurisdiction to resolve questions or disputes concerning the remedy, and the Postal Service has a pending request to the arbitrator to exercise his retained jurisdiction to resolve the remedy dispute." (Docket No. 10, at 1). The Postal Service further argues (in the alternative) that this case should be remanded to the Arbitrator "for clarification of the remedy consistent with his finding of a violation of the [agreement]." (Docket No. 16, at 9). The Unions, however, contend that (1) the Arbitrator's award is final and binding and (2) there is no ambiguity in his award such that remand is inappropriate. (Docket Nos. 13, 17).

1.    *Complete Arbitration*

The Court turns first to the issue of whether the Arbitrator's award is final and binding and, as such, the Arbitrator retained jurisdiction over these issues.

In *Union Switch & Signal*, the U.S. Court of Appeals for the Third Circuit articulated the complete arbitration rule, which provides that a district court may not review an arbitration decision under § 301 that does not constitute a "final and binding award." *Id.* at 611. Citing *Millmen's Local 550, United Brotherhood of Carpenters and Joiners of America, AFL-CIO v. Wells Exterior Trim*, 828 F.2d 1373 (9th Cir. 1987), the *Union Switch* Court held that where an arbitrator deferred to the parties to determine an appropriate remedy, and furthermore "retained jurisdiction in the event that the parties could not agree upon such a remedy," the complete arbitration rule requires that the district court not engage in determinations of whether an award should be enforced, as the

arbitrator's award is not yet final. *Id.* at 611, 614-615. Here, in

rendering his award, the Arbitrator stated, verbatim:

> Award
>
> These class action grievances are sustained. The Postal Service violated Article 7.1.B.1 by hiring casual clerks at the Pittsburgh P&DC as other than a supplemental work force and in lieu of full and part-time clerks from March 25, 1994 until August 20, 2004.
>
> The appropriate scope of the remedy would be the hours worked by casual clerks from March 25, 1994 to August 20, 2004. Subtracted from the remedy should be 500,000 hours for the hiring of casual clerks during the Christmas seasons from 1994 through 2003. The overtime payments due the appropriate full and part-time clerks should be calculated at the "then current overtime rates" between March of 1994 and August of 2004. If the parties wish they may substitute "at the level 5, step 0 rate" or establish an equivalent average dollar amount applicable over that time period.
>
> The recipients of the monetary awards are identified as follows: "All full and part-time craft clerk employees on the Pittsburgh P&DC's seniority rolls are to receive a prorated share of the remedy based upon the amount of time on the rolls during the period of the violation from March 25, 1994 to August 20, 2004.
>
> *The Postal Service is tasked to calculate and effectuate this remedy.*
>
> I intend this Award to be sufficiently detailed to avoid a protracted dispute over its implementation. However, as my efforts fall short, and interpretive questions remain, I retain jurisdiction over the remedy so as to resolve any questions or disputes.

(Docket No. 10, Exh. 1, at 17-18) (emphasis added).

In the Court's estimation, the Arbitrator's decision as to the *merits* is final and binding.

Further, the Court notes that the Postal Service has conceded liability and agreed that, as to the

merits of the grievance dispute, it violated the same and does not seek to relitigate this issue.

(*Transcript of Oral Argument*, at 5). As to the finality of the *award* however, the parties dispute

whether or not the Arbitrator's award is final and binding.  It is to that dispute which the Court now turns.

Similar to the language in the final paragraph used by Arbitrator Newman, the arbitrator in *Union Switch* stated:

> Adversely affected employees are to be retroactively reinstated, at least for such period as they otherwise were entitled to continued employment consistent with this decision, and are to be made whole. I retain jurisdiction to make final rulings on any remedial disputes that the parties are unable to resolve after full discussion.

*Id.* at 609.

There is some debate as to the effectiveness of language such as that found both in the Arbitrator's award here and in the arbitrator's award in *Union Switch,* namely language providing that the arbitrator "retains jurisdiction." *See* LABOR AND EMPLOYMENT LAW, Vol. 9, at § 221.04[4][c].  The *Union Switch* Court clarified the Third Circuit's position, however, holding that in "retaining jurisdiction" the arbitrator is essentially stating that if the parties fail to agree on a remedy as directed, arbitration will continue, "and only then, if at all, would the dispute have been presented in the district court." *Id.* at 611.  Moreover, the Court highlighted the need for the complete arbitration rule ensuring that an arbitrator's award is final and binding before bringing the litigation to federal court:

> The large number of cases presenting arbitration awards that defer determination of the remedy indicates that this is a common practice among arbitrators. [sic]. In principle, there is nothing wrong with this practice.  It is entirely reasonable for an arbitrator to "call time out" during an arbitration in the hope that a partial resolution will inspire the parties to work out their remaining difference on their own, thereby avoiding the time and expense of additional arbitration.  But we must take care to ensure that parties do not use these "time outs" as an opportunity to rush to court, either to preserve what they have just won, or (more often) to forestall a process that is not turning out

as they might have wished. If this is allowed, the arbitrator's time will only be spared, if at all, at the great expense of vastly prolonged and unnecessary litigation, which is of course precisely what arbitration exists to avoid.

*Id.* at 611. Furthermore, an arbitrator's retention of jurisdiction is permitted where the arbitrator's opinion "set[s] forth in the accompanying opinion those special circumstances that justify such a procedure." LABOR AND EMPLOYMENT LAW, Vol. 9, at §221.04[4][c].

Here, the Arbitrator explicitly stated that he retained jurisdiction over protracted disputes regarding the implementation or interpretation of his award. (Docket No.10, Exh. 1, at 17-18). In giving the parties some deference as to the calculation and implementation of the award, the Arbitrator indeed set forth the circumstances warranting his retention of jurisdiction. In their Complaint, the Unions request an order enforcing the award, however, part of said award requires the parties to come to an agreement as to rate of pay. The Court cannot enforce an award that is not complete.

While the Unions have argued that there is an agreement as to the rate of pay insofar as they agreed to the Postal Service's $30.00 per hour rate, the Unions filed the instant complaint *prior to* the letter purportedly accepting the $30.00 rate. (*Transcript of Oral Argument,* at 36-37; Docket No. 10, Exh. 3). As such, the Unions' Complaint seeking enforcement was premature in that the parties had not yet agreed on a rate of pay. Moreover, as evidenced by the correspondence between the parties, albeit subsequent to the filing of the instant action, the parties continued to attempt to reach an agreement as to the appropriate rate of pay at which to calculate the Arbitrator's award. (Docket No. 10, Exhs. 2-5). While the Postal Service offered to calculate the award at a $30.00 per hour rate multiplied by overtime hours worked by casual employees, (Docket No. 10-3, Exh. 2), the Unions vehemently disagreed with "the monetary award for <u>overtime worked</u> by casuals as, that matter was

a [sic] not an issue," (Docket No. 10-4, Exh. 3) (emphasis in original), instead directing the Postal Service to the Arbitrator's award as to hours worked.  Word for word, the Unions responded this way: "Your determinations distort the stated remedy and can only be interpreted as a diversionary tactic, which, if implemented and if effectuated as such, would not satisfy compliance with the award." (Docket No. 10-4, Exh. 3).  Such rhetoric hardly implies agreement.  Moreover, to the extent that the Unions agreed to the actual $30.00 rate, if at all, they qualified the same, noting that "you [i.e., Postal Service] established the $30.00 per hour rate" and further noting that the Arbitrator's reference to substitution of the rate "as the 'equivalent average dollar amount' per hour for calculating overtime payments," (Docket No. 10-4, Exh. 3).  In turn, after noting that "disagreement exists between the parties on remedy," the Postal Service took issue with the appropriateness of using the Step 4 Settlements in calculating the award.  (Docket No. 10-5, Exh. 4).  Provoking yet another response, the Unions replied articulating the clear disagreement between the parties, i.e., calculating the award using overtime hours worked by casual employees versus hours worked by casual clerks.  (Docket No. 10-6, Exh. 5).  The running difference of opinion culminated in a letter from the Postal Service to the Arbitrator dated August 17, 2007:  "The sole purpose of this correspondence is to apprise you of a dispute in effecting a remedy in this case." (Docket No. 10-7, Exh. 6).  Considering this on-going disagreement by way of correspondence between the parties, the Court finds that no agreement existed (in any form) between the parties as to the rate of pay to be used in calculating the award.  Rather, it appears from the Court's perspective that the instant litigation has stalled this process.

Accordingly, the Court finds that the Arbitrator explicitly retained jurisdiction over the interpretation and implementation of the remedy of the *award* and, considering the parties' clear

disagreement, that the Arbitrator's award is not final as to the remedy.

2.    *Remand*

As discussed above, the Court finds that the Arbitrator's award was not complete as is required for this Court to enforce it under the complete arbitration rule, as articulated by the U.S. Court of Appeals for the Third Circuit. *Union Switch & Signal Div. American Standard Inc. v. United Electrical, Radio & Machine Workers Local 610*, 900 F.2d 608, 611. This case should also be remanded because there are ambiguities as to the scope of damages. Because whether or not this case should be remanded to the Arbitrator is a separate issue from whether or not the arbitration was final and binding and, in order to clarify the scope of the Arbitrator's jurisdiction over this litigation, the Court finds it necessary to address this issue. The Court therefore turns to the merits of remand.

The Unions have argued that the doctrine of *functus officio* stands for the proposition that the Arbitrator's decision is final and binding and that the Arbitrator "has no further authority to redecide [sic] this issue" pertaining to the amount of the award. (*Transcript of Oral Argument*, at 34; *see also* Docket No. 13, at 19). It further argues that under the doctrine, the Arbitrator's task is finished, which requires that this Court retain jurisdiction of this matter. (*Transcript of Oral Argument*, at 34).

"The doctrine of *functus officio*, Latin for a task performed, was applied strictly at common law to prevent an arbitrator from in any way revising, re-examining, or supplementing his award." *Teamsters Local 312 v. Matlack*, 118 F.3d 985, 991 (3d Cir. 1997) (emphasis in original) (footnote omitted) (citing *Glass Molders, Pottery, Plastics and Allied Workers Int'l Union v. Excelsior Foundry Co.*, 56 F.3d 844, 846-847 (7th Cir. 1995); *Colonial Penn Ins. Co. v. Omaha Indem. Co.*, 943 F.2d 327, 331 (3d Cir. 1991)). "The rule provided simply that when arbitrators have executed their award and declared their decision they are functus officio and have no power or authority to

proceed further." *Id.* (internal quotation and citation omitted). "As a general rule, once an [arbitrator] renders a decision regarding the issues submitted, it becomes *functus officio* and lacks any power to reexamine that decision." *Colonial Penn Ins. Co.*, 943 F.2d at 331(footnote and citations omitted).

However, there are some exceptions which limit the doctrine of *functus officio*, such that remand to an arbitrator for purposes of clarification is necessary. *Teamsters Local 312*, 118 F.3d at 991 (noting that subsequent to the Supreme Court's decision in *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 456 (1957) and applying substantive federal labor law pursuant to § 301 of the Labor and Management Relations Act, "the federal courts have been less strict in applying the common law *functus officio* rule in reviewing labor disputes") (citing *e.g. Locals 2222, 2320-2327, Int'l Bhd. Of Elec. Workers v. New England Telephone & Telegraph Co.*, 628 F.2d 644, 647 (1st Cir. 1980); *Enterprise Wheel & Car Corp. v. United Steelworkers*, 269 F.2d 327, 332 (4th Cir. 1959), *aff'd in relevant part*, 363 U.S. 593, 599 (1960); *United Steelworkers v. Ideal Cement Co.*, 762 F.2d 837, 841, n. 3 (10th Cir. 1985)). The U.S. Court of Appeals for the Third Circuit has found an exception to the doctrine where an arbitrator's award is, on the face of the award, ambiguous.

In *Colonial Penn*, the U.S. Court of Appeals for the Third Circuit held that, while a district court should not remand an arbitration award in order to relitigate the *merits* of the dispute, the doctrine of *functus officio* does not preclude remand to an arbitrator for *clarification of an award*, where there exists an ambiguity in the award. *Colonial Penn Ins. Co.*, 943 F.2d at 332 (providing that "[w]here the award, although seemingly complete, leaves doubt whether the submission has been fully executed, an ambiguity arises which the arbitrator is entitled to clarify") (quoting *La Vale*, 378 F.2d at 573). Moreover, "a district court should not clarify an ambiguous arbitration award but

should remand it to the [arbitrator] for clarification." *Mutual Fire, Marine & Inland Ins Co. v. Norad Reinsurance Co. Ltd.*, 868 F.2d 52 (3d Cir. 1989) (citing *United Steel Workers of America, ALF-CIO-CLC v. Danly Machine Corp.*, 852 F.2d 1024, 1027 (7th Cir. 1988); *Oil, Chemical & Atomic Workers Int'l Union, Local 4- 367 v. Rohm & Haas, Texas, Inc.*, 677 F.2d 492, 495 (5th Cir. 1982)).

The U.S. Court of Appeals for the Third Circuit has extended this rule to cases involving labor arbitration. *See Teamsters Local 312* at 992 (holding that the doctrine of *functus officio* did not prevent court from remanding in order to clarify an ambiguity in the arbitrator's award insofar as it would "in no way reopen the merits of the controversy") (internal quotations omitted). *See also Office & Professional Employees Int'l Union v. Brownsville General Hospital*, 186 F.3d 326, 332 (3d Cir. 1999) (noting that, "remand for clarification under such conditions is consistent with the policy of judicial restraint that is the thrust of federal arbitral jurisprudence because it gives the arbitrator the opportunity to clarify an award with respect to which an ambiguity has arisen rather than forcing the court to interpolate its own estimate of the arbitrator's intent"); *United Steelworkers of America, Dist. 36, Local 8249 v. Adbill*, 754 F.2d 138, n. 2 (3d Cir. 1985) (noting that, "given the very limited scope of judicial review of labor arbitration awards, we are not free to substitute our own judgment for that of the arbitrator") (citing *Steelworkers v. American Manufacturing Co.*, 363 U.S. 564, 567-568 (1960)). In *Teamsters*, the Third Circuit held that "where an arbitrator's award generates a collateral dispute about its scope and application, the question of whether the award will be enforced is for the arbitrator to determine." *Id.* at 940. *See also United Mine Workers of America Dist. No. 5 v. Consolidation Coal Co.*, 666 F.2d 806, 811 (3d Cir.1981) (holding that, like an *arbitration award*, a settlement agreement must be "sufficiently specific" and noting that, "[t]o avoid preempting the factfinding functions which the parties have contractually assigned to the grievance

machinery and arbitration, courts will not attempt to enforce a[n] [sic] agreement that is too vague or too ambiguous in its meaning or effect") (citations omitted).  This Court is, therefore, not prevented from remanding this case to the arbitrator for clarification of his award if, indeed, the award is ambiguous.

For purposes of determining whether an arbitration award is ambiguous and should be remanded to the arbitrator for clarification, a court may look both at the face of the award and objectively ascertainable facts.  *Colonial Penn Ins. Co.*, 943 F.2d at 334 (holding that "an ambiguity in the award for which the court may remand to the arbitrators may be shown not only from the face of the award but from an extraneous but objectively ascertainable fact").  An ambiguity "warranting remand exists where an award is subject to at least two interpretations, or where the award fails to take into account circumstances that arise after it has been made." *Pittsburgh Metro Area Postal Workers Union, AFL-CIO v. United States Postal Service*, Civil Action No. 04-0668, at *7 (W.D.Pa. 2005); Docket No. 16, Exh. 3 (citing *American Postal Workers Union, AFL-CIO v. U.S. Postal Service*, 254 F.Supp. 2d 12, 15 (D.D.C. 2003) (quoting *American Ins. Co. v. Seagull Compania Naviera, S.A.*, 774 F.2d 64, 67 (2d Cir. 1985))).  Moreover, remand is appropriate where the court "does not know what it is being asked to enforce." *Id.* at 7 (quoting *American Postal Workers*, 254 F. Supp. at 15).

The Postal Service argues that the Arbitrator's award contains two (2) ambiguities, namely: (1) whether the language in the award for "appropriate employees" encompasses employees who, at the relevant time periods were on leave[2] or casual employees working at the Bulk Mail Center,

---

[2]

The Postal Service contends: "if an employee spent significant amount of time on military leave, for example, that  person could not have received the hours that instead went to casual

who were not at issue in the merits of the case; and (2) whether the language of the Arbitrator's award regarding the rate of pay to be used in calculating the award is to be $30.00 per hour or calculated some other way.[3]

As to the first argument, the Court agrees that the Arbitrator's award is ambiguous as to whether or not employees on leave during the relevant time periods are to be included in the employees receiving the award. The Postal Service argues that, in calculating his award, the Arbitrator used seniority rolls which included employees who could not have done with work, i.e., employees who were on leave during the relevant time periods, yet, it would be inconsistent with the Arbitrator's award language to include said employees. (*Transcript of Oral Argument*, at 11). The Postal Service further argues that, while the Arbitrator defines the appropriate employees for purposes of calculating an award, that definition does not specify whether employees who could not have worked during the relevant time periods are to be included. (*Transcript of Oral Argument,* at 8-9). The Court agrees that whether or not the award is to include those individuals not capable of working during the relevant time period is ambiguous and is a question that should be answered by the Arbitrator.

As to the second argument, namely what would be the appropriate remedy for the Postal Service's violation of the agreement, the Arbitrator notes that "the purpose of a remedy in a 'casual

_____

employees." (Transcript of Oral Argument, at 7).

[3]

The Unions maintain that the Postal Service has attempted to dispute whether the calculation of the award is to be done using "overtime hours worked" as opposed to "total hours" worked by casual employees plus overtime hours worked by "appropriate" employees, as provided by the Arbitrator. At oral argument, however, the Postal Service clarified that it found two ambiguities in the Arbitrator's award appropriate for consideration on remand, namely, who are the "appropriate" employees paid and the appropriate rate of pay. (*Transcript of Oral Argument*, at 14-15).

in lieu of' grievance is to make restitution *to the affected career employees* by trying to restore the status quo ante as if career employees had done the work instead of the proscribed use of casual employees." (Docket No. 10, Exh. 1, at 17) (emphasis added). It is clear from the Arbitrator's discussion of the merits of the case that he was aware of the potential that, during the relevant time periods, there were career employees on various types of "extended leave" and, furthermore, that the hiring of casuals as replacement for these employees would not necessarily be in violation of the collective bargaining agreement. (Docket No. 10, Exh. 1, at 15).[4] In the Postal Service's calculation, there are 275 individuals on the seniority rolls that would not have been available for work regardless of the hiring of casual employees. (*Transcript of Oral Argument*, at 11).    The Arbitrator does not specifically discuss whether career employees on leave are included among the employees used in calculating the award. Rather, in defining which employees are to be included, the Arbitrator found:

> The overtime payments due *the appropriate full and part time clerks* should be calculated at the "then current overtime rates" between March of 1994 and August of 2004. If the parties wish, they may substitute "at the level 5, step 0 rate" or establish an equivalent average dollar amount applicable over that time period.

(Docket No. 10, Exh. 1, at 18). Immediately thereafter, the Arbitrator defined the individuals who were to receive a prorata share of said award:

> The recipients of the monetary awards are identified as follows: *"All full and part- time clerk craft employees on the Pittsburgh P&DC's seniority rolls are to receive a prorated share of the remedy based upon the amount of time on the rolls during the period of the violation from March 25, 1994 to August 20, 2004."*

---

[4]

"[T]he court is not obligated to ignore the opinion [section of the arbitrator's award] where it aids the interpretation of the damage award." *Pittsburgh Metro Area Postal Workers' Union* Civil Action No. 04-0668, at 8 (citing *The Newark Morning Ledger Co. v. Newark Typographical Union Local 103*, 797 F.2d 162, 165, 167 (3d Cir. 1986)).

(Docket No. 10, Exh. 1, at 18). In discussing an appropriate remedy, the Arbitrator contends that the purpose of the award is to "make restitution" to "affected employees". (Docket No. 10, Exh. 1, at 17). Whether or not such "affected employees" include individuals who were not available to work during this time period is ambiguous on the face of the Arbitrator's award. One reasonable interpretation of the Arbitrator's award is that individuals on leave during the relevant times would not be "affected career employees" for purposes of calculating an award.

There is an ambiguity, on the face of the award, inasmuch as it would be a reasonable interpretation of the award to conclude that, in calculating the overtime payments, "the appropriate full and part time clerks" may or may not include individuals on leave during the relevant time period, based on the Arbitrator's discussion as to the merits of the case and the purpose of the award, namely, to make restitution to affected employees. *Id.* at 10.

This case is very similar to *Pittsburgh Metro Area Postal Workers' Union v. United States Postal Service*, and this Court finds the same instructive. In that case, as in this case, the Union sought enforcement of an arbitration award, arguing that the Postal Service was required to do nothing more than a simple calculation. The Postal Service, however, argued that there was an ambiguity as the employees who were to be included in calculating the damages. The Court there held that, reading the arbitrator's entire decision, the decision "strongly suggests that he may not have intended that the damage award be calculated in accordance with the formula articulated by the unions. The arbitrator may not have intended to compensate every worker in the Craft." *Pittsburgh Metro Area Postal Workers' Union v. United Postal Service*, No. Civ. A. 04-0668 at * 9; (Docket No. 16, Exh. 3, at 9). The Court then remanded the matter to the arbitrator for clarification of the award. *Id.* at 12.

In this case, in light of the present Arbitrator's decision, in particular his statement as to the purpose of an "in lieu of remedy," whether or not the Arbitrator (for purposes of calculating the award) meant to include employees on leave during the relevant time period is ambiguous. It is not for this Court to determine what the Arbitrator intended in making this award, rather, it is for the arbitrator who heard the dispute. Furthermore, it is for the Arbitrator to address the issue of which individuals are to receive a prorata share of the award, once calculated. Therefore, the award is ambiguous and should be remanded for clarification by the Arbitrator.[5]

Finally, as to whether the language regarding the rate of pay is ambiguous, the Court finds that there is no ambiguity as to the fact that the Arbitrator offered the parties' options as to how the award would be calculated, particularly regarding the rate of overtime pay to be used:

> The appropriate scope of the remedy would be the hours worked by casual clerks from March 25, 1994 to August 20, 2004. Subtracted from the remedy should be 500,000 hours for the hiring of casual clerks during the Christmas seasons from 1994 through 2003. The overtime payments due the appropriate full and part-time clerks should be calculated at the "then current overtime rates" between March of 1994 and August of 2004. If the parties wish they may substitute "at the level 5, step 0 rate" or establish an equivalent average dollar amount applicable over that time period.

(Docket No. 10, Exh. 1, at 17). However, as discussed above, there is a debate between the parties as to what rate to use in calculating the amount of the award. Furthermore, the Postal Service contends that there is an ambiguity as to whether and how the Step 4 Settlements referenced on page 17 of the Arbitrator's opinion are to factor into the award calculation. (Docket No. 16, at 3).

Both prior to and subsequent to the filing on this action, there has been ongoing discussion

_____

[5]

Furthermore, the Court opines that the Postal Service is correct in assuming that remanding this issue to Arbitrator Newman is appropriate in order to avoid further grievances from employees who worked more hours during the relevant time period, but received a comparable prorata share. (*See Transcript of Oral Argument*, at 13).

between the parties as to what rate of pay they have agreed or will agree to use in calculating the award. (*See* Docket No. 10, Exhs. 2-5; Docket No. 17, Ehxs. E). This again was a task placed on the parties by the Arbitrator. Insofar as the arbitration of this award is not final and binding, the parties are still tasked to make this determination. It is not for the Court to make this determination for the parties. This case is therefore remanded to the Arbitrator for the resolution of any further disputes regarding the award.[6]

This Court cautions that the scope of the Arbitrator's determination on remand, however, is narrowed to that of clarification of the award and that the merits of the underlying grievances in dispute are not to be revisited. Hence the arbitrator is not free, on remand, to revisit the merits of his initial determination. *Office & Professional Employees Int'l Union*, *Local No. 471*, 186 F.3d at 334. The Court is guided by the following: "remand is permitted only in those limited circumstances that justify departure from the *functus officio* rule, such as an incomplete or ambiguous award, in which there is no opportunity to revisit the merits to the dispute." *Id.* at 334. Furthermore, as discussed above, the Arbitrator's decision as to the *merits* is final and binding. The Court notes the same in order to emphasize the narrow scope of any arbitration proceedings on remand. However, the Court again notes that the Postal Service has conceded this point and agreed that, as to the merits

---

[6]

The Court notes that, in its Reply Brief, the Unions argue that the Postal Service has waived any argument as to the Arbitrator's handling of the Step 4 grievance settlements. (Docket No. 13, at 12). While the Court does note the narrow scope at which the Arbitrator may clarify his award, the issue of waiver is not properly before this Court, insofar as this Court has already held that this case should be remanded to the Arbitrator for clarification of his award based on the fact that (1) arbitration concerning the award was not complete and (2) there are ambiguities in the award. Furthermore, the parties were tasked to determine at which rate of pay they would calculate the award. Therefore, whether and how the Step 4 grievances factored into the Arbitrator's award is a question that he should answer in the process of clarifying the award and whether to use said rate of pay is not a question for this Court.

of the grievance dispute, it violated the same and does not seek to relitigate this issue. (*Transcript of Oral Argument*, at 5).

Because this Court (1) finds that the arbitration award at issue is not complete; and (2) because there are ambiguities in the arbitrator's award warranting remand, this case is remanded to Arbitrator Elliot Newman pursuant to this Memorandum Opinion for further proceedings limited to the clarification of issues pertaining to the implementation of the Arbitrator's award.

## CONCLUSION

Based on the foregoing, Defendant's Motion to Dismiss, or, in the alternative, Motion for Summary Judgment [9] is **GRANTED** to the extent Defendant seeks dismissal pursuant to Rule 12(b)(6), and therefore, the Court remands the instant matter to Arbitrator Newman pursuant to this Memorandum Opinion.

<u>*s/ Nora Barry Fischer*</u>
Nora Barry Fischer
United States District Judge


Dated: April 16, 2008

cc:     All counsel of record as well as Arbitrator Newman.